WILLIAM H. THOMPSON ET AL. *v.* W. GRASON
WINTERBOTTOM ET AL.

[No. 17, January Term, 1928.]

*Decided April 3rd, 1928.*

The cause was submitted on briefs to BOND, C. J., PATTI-
SON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN,
JJ.

*Thomas F. Healey,* for the appellants.

*T. Sangston Insley* and *S. Scott Beck,* for the appellees.

URNER, J., delivered the opinion of the Court.

In the spring of 1926 the appellees, who operate a canning factory, contracted in writing with William H. Thompson, one of the two appellants, to plant and cultivate for the appellees fifteen acres of land in tomatoes and to deliver the crop when matured at a designated wharf and at a specified price per basket. The acreage mentioned in the agreement was part of a farm tenanted by Thompson and owned by Dr. Herman P. Copeland, the other appellant. It was stipulated in the agreement that Thompson should not raise tomatoes on the farm for any person other than the appellees. Before contracting with the tenant, the agent of the appellees interviewed the landlord, who referred him to the tenant for any agreement which might be made on the subject. In answer to the agent's inquiry as to how the checks in payment for the tomatoes should be drawn, Dr. Copeland said they could be made payable to Thompson.

The farm had been orally leased to Thompson on a share rental. It had been occupied and cultivated by him on the same terms for two years prior to the time of the contract involved in this suit. In each of the preceding years he had raised crops of tomatoes on the farm under his own contracts with canners, and the landlord had shared in the proceeds. After the execution of the tomato contract for the season of 1926, the tenant planted seventeen acres in tomatoes. When the crop was ripening, and part of it had been delivered to the appellees, Dr. Copeland claimed that ten acres of the tomato area had been planted and cultivated for his exclusive benefit under a general reservation of such a right in the terms of the tenancy. No intimation was given the appellees of the existence of that right when they contracted with the tenant by the landlord's express permission. There was nothing in the apparent conditions of the tenant's occupancy to indicate that his lease was subject to the qualification since disclosed

or was in any respect different from the customary renting on shares. No other crop had been planted during the tenancy for the landlord's separate use. The tomato acreage claimed by Dr. Copeland was planted and cultivated by the tenant; but they both state that the former provided the plants and paid for the work. It was not until the crop was maturing that the appellees were apprised of the landlord's claim, although he had been promptly informed by the tenant that a contract with the appellees had been executed.

In pursuance of his claim to the product from ten of the seventeen acres planted in tomatoes, Dr. Copeland, early in September, 1926, began to remove the crop being gathered from the ten acre patch and to have it delivered to another canner at a price higher than that which the appellees contracted to pay. The pending suit was then brought for specific enforcement of the contract and for a receivership and an injunction in aid of that object, and from a decree affording the plaintiffs such relief, as to fifteen acres of the tomatoes, the defendants have appealed:

The evidence proves the essential facts which have been stated, and they justly entitle the plaintiffs to the relief granted. Upon the principle of equitable estoppel the appellants are precluded from successfully disputing the plaintiffs' right to have their contract with the tenant applied to fifteen acres of the tomatoes which he planted, cultivated, and harvested on the farm in his possession. The prejudice to the appellees from a failure to perform the contract is clearly shown. The prosecution of their business depends upon the provisions made for the acreage from which their requisite supplies of tomatoes are to be obtained. Upon the basis of such arrangements they plan and regulate their operations for the canning season, make purchases of cans and other material, and contract for sales of their future products. If Thompson had agreed to plant only seven acres in tomatoes for the appellees, the remaining acreage desired could doubtless have been elsewhere secured upon the same terms. Because of their reliance upon his agreement to plant for them fifteen acres in tomatoes, the appellees would have been sub-

jected to loss from a material failure of performance, as the deficiency of tomatoes thus occasioned would have had to be supplied by purchases at higher and rising prices in the open market. This loss would result from the landlord's suggestion that the appellees negotiate with his tenant 'in regard to a tomato contract, and from his omission to inform them of the reserved right which he now asserts. They were thus encouraged to rely upon an apparent authority of the tenant to act for his landlord as well as for himself in contracting for the production of tomatoes on the farm for the ensuing season. There is no injustice to the landlord in requiring him to recognize the transaction which his conduct induced. But it would be plainly unjust to the appellees to deny them the benefit in full of their agreement with the tenant under the circumstances proved. The area planted in tomatoes by the tenant included sufficient acreage to serve the purposes of the contract with the appellees, and the facts estop the landlord to claim that the crop, to that extent, was not wholly raised in pursuance of the agreement, or that he is not affected by its provisions. There is ample support, in principle, for that conclusion in prior decisions of this court. *Carmine v. Bowen,* 104 Md. 198, 204; *Brager v. Levy,* 122 Md. 554; *Robinson v. Heil,* 128 Md. 645, 650; *Carroll v. Manganese Safe Co.,* 111 Md. 252, 258; *Carroll Springs Co. v. Schnepfe,* 111 Md. 420, 430; *Maryland Tel. Co. v. Ruth,* 106 Md. 644, 656; *Hardy v. Chesapeake Bank,* 51 Md. 562.

The presence of a seal opposite the tenant's signature on the contract with the appellees was made the basis of an argument that, as thus executed, it was not effective against the landlord as an exercise of any authority which he could be found expressly or impliedly to have conferred. The equitable considerations which we find controlling in this case are not affected by the use of the seal. Since the agreement would have been valid as a simple contract, the seal may be disregarded. *Horner v. Beasley,* 105 Md. 196.

It was argued also that the contract was not sufficiently certain in its terms to be enforced, and that it lacked mutuality, but we find no ground upon which those theories can be

sustained. Another contention in the brief for the appellants is that the tenant was influenced to sign the contract by misrepresentations of the appellees' agent as to the acreage to which it was really intended to apply. The circuit court did not adopt that view, and from our study of the evidence we see no reason to differ from its conclusion as to the facts.

The point is made that the landlord was not a formal party to the suit. But as he was directly interested in the subject of the litigation, and actually participated in the trial, he is bound by the decision. *Parsons v. Urie,* 104 Md. 238.

*Decree affirmed, with costs.*