R. T. WOODFIELD, INC., ET AL. *v.* MONTGOMERY COUNTY BOARD OF EDUCATION to use of INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION

[No. 31, September Term, 1968.]

34

*Decided January 10, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Warren Browning* for appellants.

*Luke Marbury,* with whom were *Vivian V. Simpson, Simpson & Simpson,* and *Venable, Baetjer & Howard* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

On December 2, 1966, the appellee, International Telephone and Telegraph Corporation (ITT),[1] filed suit against the ap-

---

1. The suit was brought in the name of the Board of Education of Montgomery County to the use of International Telephone and Telegraph Corporation.

pellants for money due and owing pursuant to a certain labor and material payment bond executed by appellant R. T. Woodfield, Inc. (Woodfield) as principal and the appellant National Surety Corporation (National) as surety. Suit was also filed against Wilbur R. Hansen, t/a Hansen Plumbing and Heating Company (Hansen) for money due and owing, but at the commencement of the trial the cause of action against that defendant was placed on the stet docket.

Woodfield was the general contractor for the construction of the Kemp Mill Junior High School in Montgomery County, and National provided it with a labor and material payment bond naming Montgomery County Board of Education as the obligee. Woodfield entered into a subcontract with Hansen for the plumbing, heating, ventilation and air conditioning work on the new school. Hansen, in turn, contracted with ITT on January 27, 1965, to supply certain air conditioning and ventilating equipment for that job. The total net price was $43,920.00 f.o.b. appellees' factory in Philadelphia, Pennsylvania, with freight allowed to the freight station nearest destination. On October 26, 1965, ITT made a shipment to the job site which included five large air handling units, one of which was a "NESBIT MODEL LPC 25-VVF2-W4" as called for by the specifications. These units are generally known as audicons, and they can be manufactured with many variations and contain the mechanisms to heat, ventilate, and after a cooling coil is added, they can also cool. One of these audicons, a vertical floor mount model, was not an item held in stock but was manufactured specifically for the Kemp Mill Junior High School. On November 1, 1965, Mr. Frederick M. Hewitt of Taze & Hewitt, Inc. (the ITT representative in the Baltimore trading area) testified that he received a telephone call from Mr. Daniel W. Johns, Hansen's foreman and the individual who signed Hansen's order with ITT, to the effect that one audicon unit was incorrect since it could not be mounted in the space that had been provided for by the architect. Johns further informed Hewitt that the audicon would have to be returned to the factory and the correct unit shipped in. The Washington area representative of ITT, Mr. John O'Connor, visited the job site and determined that the unit should have been a horizontal-ceiling mount model.

Then he called ITT in Philadelphia to determine if a field correction could be made. In order to make such a correction it was necessary to order some new material (mounting angles and vibration eliminators) and obtain a mechanic to install the new parts and perform the conversion on the job site. On January 5, 1966, Mr. Vopper, ITT's field mechanic, went to the school where he spent three hours converting the unit from vertical-floor mount to horizontal-ceiling mount. This conversion was done at a cost to ITT of approximately $32.00 for labor and materials but none of this was billed to Hansen.

On February 16, 1966, the appellants were informed of Hansen's failure to pay ITT the sum of $43,861.48 by copies of a letter addressed to the Montgomery County Board of Education. After receiving no satisfactory response to this letter, ITT instituted suit on December 2, 1966, upon the labor and material bond. By an amended opinion and order dated January 2, 1968, the lower court granted ITT a judgment for $43,861.48 with interest from the date of suit and costs. At trial and on appeal appellants contend that the written notice of the claim was not timely as required by Code (1964 Repl. Vol.), Article 90, Section 11 (c). ITT has also noted a cross appeal from the judgment on the issue of interest.

The bond sued upon was furnished in compliance with Article 90, Section 11 (c) which provides that persons not having a direct contractual relationship with the contractor furnishing the bond shall have a right of action upon the bond "upon giving written notice to the contractor within ninety (90) days from the date on which such person did, or performed the last of the labor or furnished or supplied the last of the material for which such claim is made . . . ." The above quoted language of the Code is similar to 40 U.S.C. Sec. 270 b (a) (1964), popularly known as the Miller Act. The main issue in this case is whether ITT gave written notice of its claim as required by the bond within ninety days after it did or performed the last of the work or labor or furnished the last of the material for which its claim is made. Appellants raise no objections to the sufficiency of the notice other than to contend that it was not timely.

ITT gave its notice of claim on February 16, 1966. It con-

tends that the time for giving such notice should be computed from January 5, 1966, when the audicon was converted from a vertical floor mounted unit to a horizontal ceiling mounted unit, and that therefore the appellants were informed of their claim within the required ninety days. The appellants argue that the time should be measured from October 26, 1965, which was the date of delivery of this unit to the job site and well beyond the ninety day limit. From an examination of the record we cannot say that the lower court erred in finding that the notice was given within the required time. In their brief appellants cite *United States v. Western Electric Co.*, 337 F. 2d 568 (9th Cir.), a case decided under the Miller Act, for the proposition that to constitute work for which a claim may be made by a subcontractor, the work relied upon must be required to complete the contract. In light of this decision they urge this Court that a finding of whether the conversion work done by ITT was work necessary to complete ITT's contract will be determinative of this case. To support their position that the conversion work was not necessary to the completion of its agreement, appellants refer to Code (1964 Repl. Vol.), Article 95B, Section 2-313 (1) (b) which provides in pertinent part:

"(1) Express warranties by the seller are created as follows:

. . . .

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

Thus, appellants argue that since the appellee bargained to sell equipment by catalogue description (the actual units being described in the specifications by their catalogue description) ITT was therefore bound to an express warranty that the audicon would conform to their catalogue description of a vertical unit. As a necessary result, they maintain that when ITT supplied the audicon unit as warranted, an enforceable claim arose on October 26, 1965. Appellees, on the other hand, refer to Article 95B, Section 2-315 which provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the

goods are required and that the buyer is relying on
the seller's skill or judgment to select or furnish suit-
able goods, there is unless excluded or modified un-
der the next section an implied warranty that the
goods shall be fit for such purpose."

ITT states that it was bound by an implied warranty of fitness
for a particular purpose since its contract with Hansen merely
called for five audicons and its representatives considered plans,
determined what units should be supplied, and arranged for
their manufacture.

Although we think that the lower court's reliance upon
*United States v. Gunnar I. Johnson & Son, Inc.,* 310 F. 2d
899 (8th Cir.), was justified, we prefer to rest our decision on
a different basis. We also need not resolve the conflicting claims
as to the nature of any warranty in the sale of the audicons
since our determination of this case is based upon another sec-
tion of Article 95B. Section 2-209 provides in pertinent part:

"(1) An agreement modifying a contract within this
subtitle needs no consideration to be binding."

Mr. Daniel Johns, Hansen's foreman and the individual who
signed the initial order for Hansen, telephoned a representative
of ITT and informed him that one of the audicons was not
the proper unit needed and that it would have to be returned
to the factory and replaced. ITT's agent readily agreed to make
a field correction. On January 5, 1966, such correction was
made. We hold that these actions of the parties constituted a
modification of the contract. No consideration was needed for
this modification, and the Statute of Frauds is inapplicable since
the unit was specially manufactured. Article 95B, Section 2-201
(3) (a). Appellant does not contend that ITT was acting in
bad faith in providing the requested changes in order to extend
the time for making the claim on the bond. Appellee was act-
ing as a responsible business concern trying to satisfy the re-
quirement of its customer. The lower court did not err in find-
ing that the last labor and/or material was furnished or supplied
on January 5, 1966, and that the appellees' notice was given
within the required ninety days period.

By letter dated February 15, 1966, the appellee informed the Montgomery County Board of Education that they had not received full payment for the materials they delivered in connection with the school project. Further, they requested that the Board withhold funds due to contractors. Appellant received a copy of this letter on February 16, 1966. On a cross appeal ITT urges that the lower court should have granted the interest on the debt from February 16, 1966, rather than from the date ITT initiated suit against the appellants. This Court has held that interest is recoverable on a bond claim against the surety for a liquidated amount due and owing from the contractor. *Peerless v. Prince George's County,* 248 Md. 439, 237 A. 2d 15; *Mullan Co. v. International Corp.,* 220 Md. 248, 151 A. 2d 906. However, interest is due either from the date of demand for payment of the claim and the refusal to pay, or from the date of filing suit. *Peerless v. Prince George's County, supra.* We do not consider the letter sent to the Montgomery County Board of Education with copies to the appellants as sufficient demand for payment. Accordingly, the lower court correctly allowed interest from the date of the filing of suit.

Finding no error in the rulings of the lower court the judgment will be affirmed.

*Judgment affirmed. Costs to be paid by appellants.*