*Nationwide Property & Casualty Insurance Company, et al. v. Selective Way Insurance Company*, No. 1, September Term, 2020. Opinion by Getty, J.

**CIVIL PROCEDURE – PREJUDGMENT INTEREST – DEFENSE COSTS –** Court of Appeals held that a plaintiff is not entitled to prejudgment interest, as a matter of right, on the damages in the form of defense costs resulting from a liability insurer's breach of its duty to defend. Such a claim is unliquidated, not fixed by agreement, and not ascertainable at the time of breach. Therefore, an award of prejudgment interest on amounts paid for defense costs falls within the discretion of the finder of fact.

Circuit Court for Baltimore County
Case No. 03-C-08-006273
Argued: October 2, 2020

IN THE COURT OF APPEALS
OF MARYLAND

No. 1

September Term, 2020

_____

NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY, ET AL.

V.

SELECTIVE WAY INSURANCE COMPANY

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran

JJ.

_____

Opinion by Getty, J.

_____

Filed: April 1, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In awarding prejudgment interest, Maryland courts have traditionally operated under a "modified discretionary approach"—that is, an approach which generally places the award of prejudgment interest within the discretion of the trier of fact, but also recognizes distinct exceptions in which a plaintiff is entitled to prejudgment interest as a matter of right. *See Developments in Maryland Law (1990-91)*, 51 Md. L. Rev. 507, 514 (1992). This case presents a question of whether prejudgment interest on defense costs where a party breaches its duty to defend properly falls within the exception and should therefore be awarded as a matter of right. As we explain below, we hold that it does not fall within the exception, and we affirm the Court of Special Appeals' conclusion that the award of prejudgment interest is within the discretion of the factfinder.

## BACKGROUND

### A.      *The Highpointe Apartments Construction Project.*

The Highpointe Business Trust undertook a large construction project in 2001 to build a new high-end apartment complex, the Highpointe Apartments, in Hunt Valley, Maryland. They hired Questar Builders, Inc. ("Questar") as the general contractor for the project. In turn, Questar hired numerous subcontractors and each subcontract required the subcontractor to maintain commercial general liability insurance with both "primary and noncontributory" coverage and to name Questar as an "additional insured" on the policy.

Relevant to this case, four of Questar's subcontractors purchased commercial general liability insurance from respondent Selective Way Insurance Company ("Selective Way"). These four subcontractors provided land development work, waterproofing work, and rough carpentry work. Specifically, their responsibilities were as follows: (1) SEH

Excavating Contractors, Inc. was hired to complete earthwork, excavation, disposal of debris found buried on site, grading, sediment and erosion control, construction of retaining walls, installation of water lines, meters and storm drain lines, partial installation of rain collection system, and the installation of concrete curbs and gutters in the parking lots; (2) Streett's Waterproofing, Inc. was hired to provide all labor, tools, and equipment necessary to complete waterproofing of select foundation walls, elevator pits, and jump walls; (3) Justice Waterproofing, Inc. was hired to install tennis court waterproofing and a green and red tennis court color coat system over the existing concrete surface; and (4) King Carpentry Contractors, Inc. was hired to complete wood framing, install exterior wall and roof sheathing, install all subflooring and exterior decks, install common area doors and frames, and install exterior wood trim.

Each of the four general liability insurance policies procured from Selective Way contained provisions promising to indemnify and defend the named insureds, that is, the subcontractors themselves, against damages arising out of claims covered by the policies. Other provisions in the policies extended this coverage to an additional party if a named insured entered into a written contract promising to provide insurance for that additional party. Here, the named insureds each entered into a contract with Questar promising to name Questar as an additional insured. Taken together, these subcontracts and insurance policies required Selective Way to indemnify and defend Questar as an additional insured for claims arising out of the work performed on the Highpointe Apartments by the four subcontractors.

Construction on the Highpointe Apartments was completed in early 2004. Prior to closing, water damage incidents were brought to the attention of Questar, and, in response, Questar provided cosmetic repairs such as drywall replacement and carpet replacement. At the time of closing, Questar acknowledged the water entry into several units, but represented that the source of water entry was corrected. However, within two and one-half years, extensive construction defects became evident as water entry repeatedly occurred through exterior walls, interior walls, the roof, and windows. These defects caused mold infestation, deterioration of interior finishes, and damages to the structural integrity of the buildings.

Overall, the extensive construction defects resulted in unsafe living conditions throughout the apartment complex. In at least one incident, water penetrated the exterior walls, intermingled with the electrical system, and freely flowed through electrical outlets. Repeated water entry into units and common areas resulted in emergency repairs, relocation of tenants to alternate living spaces, and replacement of damaged personal items belonging to the tenants.

## B.    *Construction Defect Lawsuit Against Questar.*

On July 13, 2006, Highpointe Business Trust sued Questar and others alleging defective construction of the apartment complex and seeking to recover $4.5 million for resulting property damage.[1]    Questar's own liability insurers, petitioners Nationwide

---

[1] Hunt Valley, L.L.C. was a plaintiff in the original complaint, but was later removed in an amended complaint. While Highpointe Business Trust maintained continuous ownership of the apartment complex, Highpointe Associates, L.L.C. sold its sole beneficial interest in Highpointe Business Trust to Hunt Valley, L.L.C. on March 10, 2004.

Property and Casualty Insurance Company and Nationwide Mutual Insurance Company (collectively, "Nationwide") appointed and paid for separate defense counsel for Questar.

Questar both denied liability and filed a third-party complaint seeking indemnity or contribution from twenty-six subcontractors that performed work on the apartment complex. Each of the four subcontractors insured by Selective Way was named as a third-party defendant.

In April 2008, Questar's attorney wrote Selective Way seeking defense and indemnification under the policies issued to the four subcontractors. In May 2008, Selective Way sent formal denial letters in response to requests regarding two of the subcontractors, citing lack of "proof" or "evidence" as to the cause of the alleged damages. Selective Way did not respond to requests regarding the other two subcontractors.

## C.    *Nationwide's Declaratory Judgment Action.*

Several months later on June 10, 2008, Nationwide filed a declaratory judgment action in the Circuit Court for Baltimore County seeking, among other things, a declaration that Selective Way was obligated to defend Questar in the construction defect lawsuit by virtue of Questar's status as an additional insured under the Selective Way policies. Nationwide argued that Selective Way's coverage of Questar was primary, and its own coverage of Questar was secondary. Thus, Nationwide sought reimbursement from Selective Way for all defense costs incurred in representing Questar in the construction defect lawsuit.

Selective Way denied any duty to defend Questar in the construction defect lawsuit, asserted lack of adequate notice, and demanded a jury trial on all issues. Shortly thereafter,

4

the underlying construction defect lawsuit was settled, and the court granted Nationwide's motion to bifurcate the remaining issues under the declaratory judgment action. The court would first determine if Selective Way and others had the duty to defend Questar and thereby the obligation to reimburse Nationwide. If applicable, the court would then calculate the amount of damages Nationwide was entitled to recover.

In September 2009, Nationwide moved for summary judgment against twelve subcontractors' insurers, including Selective Way, seeking to establish the insurers' duty to defend Questar as a matter of law. The twelve insurers opposed Nationwide's motion for summary judgment and filed their own motion for summary judgment asserting that a sixteen-month delay in notice of the construction defect lawsuit relieved any duty to defend Questar and that Nationwide's exclusive control of the defense during the delay left Nationwide with "unclean hands."

On August 26, 2014,[2] the court entered an order granting Nationwide's motion for summary judgment in part and denying it in part. The court determined as a matter of law that the subcontractors' insurers had a duty to defend Questar in the underlying construction defect lawsuit but reserved the remaining issues for the jury. Specifically, the jury would determine whether the subcontractors' insurers suffered prejudice as a result of the delay in notice and whether Nationwide had "unclean hands." Before trial, Nationwide reached settlement agreements with all the subcontractors' insurers except Selective Way.

---

[2] In the five-year span from 2009 until 2014, the parties engaged in discovery and disputes surrounding discovery.

***D.***      ***Jury Trial on Nationwide's Claims Against Selective Way.***

On December 15, 2016, Nationwide made a second motion for summary judgment on both remaining issues before the court and again the court granted the motion in part and denied it in part. The court rejected Selective Way's defense of "unclean hands" and thus narrowed the scope of the jury trial to the single remaining issue of whether Selective Way suffered actual prejudice because of the delayed notice. In the event of finding no actual prejudice, the jury would then determine the amount of damages Nationwide was entitled to recover for its defense of Questar in the construction defect lawsuit.

The court held a five-day jury trial on March 7, 8, 9, 10, and 13, 2017. At trial, both Nationwide and Selective Way presented competing expert opinion testimony regarding the fairness and reasonableness of the fees charged. Nationwide did not request any jury instructions on prejudgment interest and did not propose any questions about prejudgment interest on the special verdict sheet it provided to the court. Without reference to prejudgment interest, the verdict sheet used by the court asked broadly, "[w]hat damages, if any, has Nationwide proved by a preponderance of the evidence?" Ultimately, the jury found that Selective Way had received timely notice of the construction defect lawsuit against Questar and Nationwide had proven $994,719.54 in total damages.[3]

In April 2017, Selective Way filed a premature appeal to the Court of Special Appeals, which was dismissed in June 2017 because the circuit court had not yet

---

[3] The jury also answered two additional questions regarding the apportionment of the defense costs, finding that while the costs were readily apportionable between various subcontractors, Nationwide was not required to apportion the costs.

determined Nationwide's entitlement to additional fees as a result of Selective Way's breach of its duty to defend.

## E.    *Trial Court Award of Prejudgment Interest.*

Once the case returned to the circuit court, Nationwide made a motion seeking a determination of Selective Way's liability for attorneys' fees and expenses incurred in the declaratory judgment action. Prejudgment interest was not requested in the motion. Subsequently, the circuit court held a hearing solely pertaining to attorneys' fees and expenses. The court awarded Nationwide $810,556.72 in fees and expenses.

After Nationwide filed the motion for attorneys' fees and expenses, but prior to the hearing on that motion, the two parties sent correspondence to the court regarding the issue of prejudgment interest. On March 20, 2018, Nationwide wrote a one-page letter directly to the circuit court with a copy to Selective Way's counsel, seeking an award of $430,534.82 in prejudgment interest on the damages awarded to Nationwide by the jury.[4] Nationwide included a detailed calculation of the prejudgment interest and electronic files containing invoices for attorneys' fees paid by Nationwide with the letter.

On April 6, 2018, Selective Way responded with a two-page letter to the circuit court judge objecting to the timing and manner in which the issue of prejudgment interest had been raised by Nationwide. Selective Way argued that the award of prejudgment interest was a matter of discretion for the factfinder to determine at trial, not for the court

---

[4] The prejudgment interest amount proposed by Nationwide was calculated at a six percent interest rate beginning at the conclusion of the construction defect lawsuit in 2009 and ending just prior to the March 2017 hearing before the circuit court on attorneys' fees and expenses.

7

to add after the judgment. Selective Way further requested the opportunity to oppose any future motion made by presenting the court with appropriate authority through "formal channels." However, on the issue of prejudgment interest, no formal motion was made for the court's consideration nor was a hearing requested or held on the matter.

On May 2, 2018, the court filed an "Order and Declaratory Judgment" establishing that Selective Way breached its duty to defend Questar in the construction defect lawsuit and was liable to Nationwide in the total amount of $1,647,659. This amount included the jury award, prejudgment interest, attorneys' fees and costs, and a reduction based on settlement awards already received by Nationwide. Specifically, the total judgment issued by the circuit court reflected $994,719.54 in defense costs in the construction defect lawsuit; $430,534.82 in prejudgment interest on those defense costs; $810,556.72 in attorneys' fees and costs incurred in the declaratory judgment action; and a reduction of $588,152 for settlement amounts Nationwide had received from other insurers.

Selective Way made several post-trial motions, one of which was a motion to alter or amend the judgment, asking the court to set aside the award of prejudgment interest. The circuit court denied Selective Way's post-trial motions, including the motion to alter or amend the judgment, and Selective Way noted a timely appeal to the Court of Special Appeals.

### F. *Appeal and Opinion of the Court of Special Appeals.*

On October 30, 2019, the Court of Special Appeals filed a reported opinion addressing twelve separate issues raised by Selective Way. On appeal, Selective Way challenged the declaratory judgment that it owed a duty to defend Questar in the underlying

8

construction defect lawsuit, the determination of damages incurred by Nationwide in defending Questar in the underlying construction defect lawsuit, the award of prejudgment interest on the damages awarded by the jury, and the award of attorneys' fees and expenses incurred by Nationwide in the declaratory judgment action.

The Court of Special Appeals affirmed the circuit court's judgment with respect to Selective Way's duty to pay defense costs incurred by Nationwide in its representation of Questar in the construction defect lawsuit; reversed the circuit court's judgment with respect to the award of prejudgment interest on those defense costs; and vacated and remanded the circuit court's judgment with respect to the amount of attorneys' fees and expenses incurred in the declaratory action. *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688 (2019). On the issue of prejudgment interest, the Court of Special Appeals held that the award of prejudgment interest was a triable issue of fact for the jury to decide, not the court to determine as a matter of law. *Id.*

Nationwide timely petitioned this Court for Writ of Certiorari, which we granted on March 11, 2020. *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 467 Md. 690 (2020). Although the Court of Special Appeals' opinion addressed numerous issues, this Court granted certiorari on the sole issue of prejudgment interest. Accordingly, before us is the single question:

> Did the Court of Special Appeals err in ruling that prejudgment interest is not recoverable as a matter of right on amounts paid for defense costs where a liability insurer breaches its duty to defend?

For the reasons more fully stated below, we affirm the Court of Special Appeals and hold that damages in the form of defense costs resulting from a liability insurer's breach of

9

its duty to defend are unliquidated, not fixed by agreement, and unascertainable at the time of the breach. Therefore, such damages are not entitled to prejudgment interest as a matter of right and are instead left to the discretion of the factfinder. Here, the jury as factfinder was not presented with the issue of prejudgment interest for deliberation, and thus the circuit court was not authorized to later award additional prejudgment interest.

## STANDARD OF REVIEW

A party's entitlement to prejudgment interest is governed by the Maryland Rules. *See* Md. Rule 2-604(a). Our interpretation of the Maryland Rules is a question of law, and therefore we review a circuit court's decision to award prejudgment interest under a *de novo* standard of review to determine whether it is legally correct. *See Davis v. Slater*, 383 Md. 599, 604 (2004) ("Because our interpretation of the . . . Maryland Rules [is] appropriately classified as [a] question[] of law, we review the issues *de novo* to determine if the trial court was legally correct in its rulings on these matters."); *see also Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004) ("When the trial court's order involves an interpretation and application of Maryland . . . case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." (internal quotation marks omitted)).

## DISCUSSION

### A. *Requirements for Prejudgment Interest Awards.*

Maryland law provides factual and procedural requirements governing the award of prejudgment interest. To begin, this Court has explained that the "purpose of awarding pre-judgment interest . . . is 'to compensate the aggrieved party for the loss of the use of

the principal liquidated sum found due it and the loss of income from such funds.'"

*Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 95 (2007) (quoting *Buxton v. Buxton*, 363 Md. 634, 652 (2001)).  Put another way, prejudgment interest "compensates the judgment creditor for his or her inability to use the funds that should have been in his or her hands at some earlier time and usually does not depend on what the debtor might have done with the money." *Buxton*, 363 Md. at 652 (emphasis in original omitted).

Prejudgment interest falls into one of two distinct categories—that which is discretionary and that which is awarded as of right.  *United Cable Television of Balt. Ltd. P'ship v. Burch*, 354 Md. 658, 668 (1999).  This Court has continually recognized the general rule that a party's entitlement to prejudgment interest is an issue for the finder of fact and accordingly "left to the discretion of the jury, or the Court when sitting as a jury." *I. W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 18 (1975) (quoting *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co. Inc.*, 213 Md. 509, 516 (1957)).  However, there are well-established exceptions to this general rule.  *Id.*

Only under certain factual circumstances that fall within an exception to the general rule will a court award prejudgment interest as a matter of right.  *See Harford County*, 399 Md. at 94 (quoting *Ver Brycke v. Ver Brycke*, 379 Md. 669, 702 (2004)).  Prejudgment interest is available as a matter of right when "the obligation to pay and the amount due" is "certain, definite, and liquidated by a specific date prior to judgment" such that "the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Buxton*, 363 Md. at 656 (quoting *First Virginia Bank v. Settles*, 322 Md. 555, 564 (1991)).  This exception "arises under written contracts to pay

11

money on a day certain, such as bills of exchange or promissory notes, in actions on bonds or under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums payable under leases as rent . . . as well [as] in conversion cases where the value of the chattel converted is readily ascertainable." *Buxton*, 363 at 656. On the other hand, no prejudgment interest is allowed in "tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement." *Id.* Pertinent to this case and "[b]etween these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of pre-judgment interest is within the discretion of the trier of fact." *Id.* at 657.

While this Court's prior decisions outline factual requirements for an award of prejudgment interest, Maryland Rule 2-604(a) sets out the procedural requirements. Maryland Rule 2-604(a) provides, "[a]ny pre-judgment interest awarded by a jury or by a court sitting without a jury shall be separately stated in the verdict or decision and included in the judgment." The Court of Special Appeals has previously construed this rule narrowly, holding that a jury's addition of "plus interest" following an award of compensatory damages on the verdict sheet was insufficient to satisfy the requirement that a prejudgment interest award must be "separately stated." *Fraidin v. Weitzman*, 93 Md. App. 168, 219 (1992).

## B. Parties' Contentions.

Nationwide argues that this case is exceptional and meets the requirements for prejudgment interest as a matter of right. Nationwide contends, and both lower courts

12

agreed, that Selective Way had a unilateral duty to defend Questar in the underlying case. Nationwide maintains that Selective Way, by declining to defend Questar, breached that duty, and is obligated to pay Nationwide $994,719.54 for attorneys' fees and costs it spent defending Questar. Nationwide argues that the amount owed was certain and definite at the time it became due and that the amount owed was ascertainable on a specific date prior to trial—the date the invoices were received and paid by Nationwide.

Additionally, Nationwide points out that Selective Way delayed any repayment of Questar's attorneys' fees and defense costs for over ten years, and that Selective Way had access to those funds at no cost. Therefore, the purpose of prejudgment interest—to compensate an aggrieved party for the loss of use and income from money due to it—is satisfied here. *See Harford County*, 399 Md. at 95. Accordingly, Nationwide maintains that the circuit court judge correctly awarded it prejudgment interest on the defense costs and attorneys' fees as a matter of right in the amount of $430,534.82.

On the other hand, Selective Way argues that this case falls under the general rule and thus whether Nationwide was entitled to an award of prejudgment interest should have been left to the discretion of the jury. Selective Way points out that Nationwide did not present a claim for prejudgment interest to the jury, the circuit court judge did not give any jury instructions on prejudgment interest, and the jury did not separately state that prejudgment interest should be awarded to Nationwide. Instead, more than a year after the jury verdict, in what Selective Way labels an *ex parte* letter to the circuit court, Nationwide requested that the court award it prejudgment interest. Consequently, the jury was never given the opportunity to consider prejudgment interest and therefore could not exercise

13

proper discretion. Likewise, the requirements of Maryland Rule 2-604(a) were not adhered to when no separate statement awarding prejudgment interest was made by the jury.

In response to Nationwide's argument that it is entitled to prejudgment interest as a matter of right in this case, Selective Way argues the amount due was not certain, definite, or ascertainable at a date prior to trial. To support this contention, Selective Way points to a series of amended complaints filed by Nationwide leading up to the trial and alleging various amounts of damages, followed by a series of summary judgment motions that the circuit court denied, which indicated the need for a jury trial to determine the obligation to pay and the amount due. Moreover, Selective Way maintains that, given the complexity of this case, it cannot be likened to cases that clearly fall within the exception of prejudgment interest as a matter of right, such as a suit on a simple promissory note. Instead, Selective Way argues this case is analogous to the Court of Special Appeals' *Maxima Corp.* decision, where the court denied prejudgment interest on attorneys' fees. *See Maxima Corp. v. 6933 Arlington Dev. Ltd. P'ship*, 100 Md. App. 441, 463 (1994). Lastly, Selective Way refutes that Nationwide's argument is consistent with the purpose of prejudgment interest, arguing that Nationwide acknowledged that it would have spent the same amount on the defense of other insureds regardless of Selective Way's acceptance or rejection of its duty to defend the claims against Questar and thus did not suffer any loss of use or income from the funds spent on Questar's defense.

In sum, Selective Way asserts that Nationwide was not entitled to prejudgment interest as a matter of right and therefore the issue of Nationwide's entitlement to such interest should have been brought before the jury to decide. Because the issue was instead

14

raised after the verdict and in the form of a letter to the circuit court, Selective Way contends that the Court of Special Appeals was correct in holding that the circuit court erroneously added prejudgment interest to the damages awarded by the jury in a subsequent order. For reasons fully explained below, we agree.

## C.    *Analysis.*

To restate the guiding principles outlined above, three rules control the award of prejudgment interest. *Buxton*, 363 Md. at 656. First, prejudgment interest is allowed as a matter of right where "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Id.* (quoting *First Virginia Bank*, 322 Md. at 564). Second, prejudgment interest is not allowed "in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement" because "the award itself is presumed to be comprehensive." *Id.* Third, prejudgment interest is left to the discretion of the trier of fact, either the jury or the court in a bench trial, when a contract case falls in between these two ends of the spectrum—one end being allowance as a right and the other being non-allowance. *Id.* at 657. This third rule serves as the general rule for prejudgment interest and encompasses the vast majority of contract cases. *Id.* (citing *Crystal v. West & Callahan, Inc.*, 328 Md. 318, 343 (1992)); *see also I. W. Berman Props.*, 276 Md. at 18. An award of prejudgment interest as a matter of right and the non-allowance of prejudgment interest are exceptions to the general rule. *See Buxton*, 363 Md. at 657.

15

*1.      Prejudgment Interest as a Matter of Right.*

In determining whether Nationwide can recover prejudgment interest as a matter of right for defense costs following Selective Way's breach, we must consider the facts of this case in light of the individual requirements necessary to satisfy the exception. Nationwide contends both the circuit court and the Court of Special Appeals held that Selective Way had a unilateral duty to pay Questar's defense costs, thus establishing Selective Way's obligation to pay Nationwide. We agree.

Next, we consider whether the amount due was fixed—that is certain, definite, and liquidated—on a specific date prior to trial. We first note that an amount is liquidated if it is "settled or determined, esp[ecially] by agreement." *Baltimore County v. Aecom Servs., Inc.*, 200 Md. App. 380, 430 n.19 (2011). In order "[f]or a sum to be liquidated, it is not necessary that the exact amount of money owed be expressly stated in the contract; however, the sum must be capable of ascertainment at the time of breach." *First Virginia Bank*, 322 Md. at 569. By contrast, "[a]n unliquidated claim is 'one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law.'" *Baltimore County v. Balt. County Fraternal Ord. of Police, Lodge No. 4*, 220 Md. App. 596, 664 (2014). This Court has determined that where a contract requires a "sum certain on a date certain[,]" the amount due is fixed. *United Cable Television of Balt. v. Burch*, 354 Md. 658, 669 (1999) (quoting *Crystal*, 328 Md. at 343.)). On this point, Nationwide maintains that the defense costs were definite and certain at the time they were incurred, and that, but for Selective Way's breach of its duty to defend Questar, Selective Way would have been aware of the exact costs as evidenced by paid

16

invoices and receipts. Nationwide likewise argues that the parties' dispute as to the cost of defense does not render the amount any less definite. On the other hand, Selective Way asserts that neither the obligation to pay nor the amount due was certain until the jury rendered its verdict.

As Nationwide emphasizes, this Court has awarded prejudgment interest as a matter of right in cases where the amount owed was in dispute and unable to be established until a court rendered a judgment. In *Mullan Contracting Co. v. International Business Machines Corp.*, this Court held that International Business Machines Corporation ("IBM") was entitled to prejudgment interest as a matter of law despite a dispute about the amount owed. 220 Md. 248 (1959). IBM sued a general contractor and its sureties for a balance due on electrical and fire alarm equipment supplied by IBM for a school construction project. *Id.* at 251. The trial court granted IBM's motion for summary judgment, which included deposition testimony that the price of the equipment was fair and reasonable, reflecting current market prices. *Id.* at 252. In response, the general contractor and sureties disputed the amount due and alleged that part of the balance was not attributable to the school project at issue. *Id.* at 254. On appeal, this Court acknowledged that interest is typically a matter for the trier of fact, but concluded that in the present case interest as a matter of right was appropriate and began accruing when IBM demanded payment, analogizing the demand to a "unilateral contractual obligation which

required payment of a liquidated sum at a certain time." *Id.* at 262 (citing *Affiliated Distillers Brands Corp.*, 213 Md. at 509).

Likewise, in *Travel Committee, Inc. v. Pan American World Airways, Inc.*, an airline sued a travel agency and its owners to recover ticket sale proceeds. 91 Md. App. 123 (1992). The Court of Special Appeals noted the general rule affording discretion to the trier of fact on issues of interest, but held that the airline was entitled to prejudgment interest as a matter of right because the record demonstrated the travel agency collected money from ticket sales, the amounts became payable to the airline thereafter, and instead of paying the amounts due, the travel agency used the money it collected. *Id.* at 188. The court reasoned, "[t]he fact that [the travel agency] and [the airline] disputed adjustments to the amount . . . owed . . . indicates that the sum owed was not certain until the jury made its determination, but we see no reason why this should interfere with an award for pre-judgment interest as to that amount actually due and owing." *Id.* Thus, the court identified the case as one "in which the money has been used, and in which there is a unilateral contractual obligation to pay money at a certain time," justifying an exception to the general rule of prejudgment interest. *Id.* (citing *Affiliated Distillers Brands Corp.*, 213 Md. at 516).

Nationwide points to *Mullan Contracting Co.* and *Travel Committee, Inc.*[5] as support for the argument that a disputed amount reaching resolution only at the time of a

[5] Nationwide cites to *Hartford Accident & Indemnity Co. v. Sherwood Brands, Inc.* for the proposition that defense costs are entitled to prejudgment interest as a matter of right. 111 Md. App. 94 (1996). However, as the Court of Special Appeals aptly noted in the decision

18

court's judgment may still constitute a fixed amount for the purposes of prejudgment interest as a matter of right. Nationwide maintains that, like the amounts due in *Mullan Contracting Co.* for the delivered equipment and *Travel Committee, Inc.* for the tickets sold, the defense costs in this case were fixed at the time Nationwide incurred them, and the following dispute on liability and amount due does not render the amount indefinite or uncertain. We do not agree with Nationwide because *Mullan Contracting Co.* and *Travel Committee, Inc.* are distinguishable from this case.

Defense costs for ongoing litigation are dissimilar to the amount due following the purchase or sale of tangible items. Legal fees are not quantifiable prior to the completion of representation, and thus legal fees in a pending action cannot appropriately be classified as liquidated under Maryland law. Here, the attorneys' fees incurred by Nationwide in its defense of Questar were billed at an hourly rate as litigation work was completed. As such, Nationwide's costs to defend Questar in the ongoing construction defense lawsuit were not ascertainable at the time of Selective Way's breach because the full cost to defend Questar had not been incurred by Nationwide at the time of Selective Way's refusal to defend

---

below, "[b]ecause the Court of Appeals vacated this Court's judgment and affirmed no part of it, the *Sherwood Brands . . .* opinion is at most a persuasive authority." *Selective Way Ins. Co.*, 242 Md. App. at 746 (citing *West v. State*, 369 Md. 150, 157 (2002) (holding a vacated appellate opinion "no longer supports or reflects a viable appellate judgment[, and] . . . such an opinion is not a precedent for purposes of *stare decisis*.")). We rely on other binding authority that is in conflict with *Hartford Accident & Indemnity Co. v. Sherwood Brands, Inc. See Maxima Corp.*, 100 Md. App. 441.

Questar in May 2008.[6] *See generally First Virginia Bank*, 322 Md. at 569. Likewise, unlike contractual agreements to purchase equipment or the sale of airline tickets at a certain price, legal fees in an ongoing lawsuit, particularly those billed at an hourly rate, are not "settled or determined" especially by contractual agreement and, further, cannot be "exactly determined by the application of rules of arithmetic or of law" on a date prior to trial. *See Baltimore County*, 200 Md. App. at 430 n.19; *see also Baltimore County Fraternal Ord. of Police, Lodge No. 4*, 220 Md. App. at 664.

There are few Maryland appellate decisions examining prejudgment interest for legal fees.[7] However, we find sound reasoning in *Maxima Corp.*, 100 Md. App. 441. In *Maxima Corp.*, the Court of Special Appeals rejected the argument that prejudgment interest on legal fees was recoverable as a matter of right, holding that attorneys' fees constitute an "unliquidated amount." *Id.* at 463. In that case, the court reviewed a trial court's grant of prejudgment interest on tenant incentive payments agreed upon in a commercial lease and the trial court's rejection of prejudgment interest on legal fees under an abuse of discretion standard. *Id.* at 461–63. The court explained, "tenant incentive payments were a liquidated amount and a sum certain that [the landlord] owed on specific

---

[6] In its brief to this Court, Selective Way asserts that at the time it declined to defend Questar in May 2008, "$719,545.47 of the alleged $994,000.00 in defense fees and costs were incurred." Thus, defense costs were ongoing and the full amount not yet ascertainable at the time of breach.

[7] Other examples of fixed amounts include bills of exchange, promissory notes, payment of bonds, contracts in which interest is stipulated, sums payable as rent, and conversion cases where the value of the chattel is readily ascertainable. *I. W. Berman Props.*, 276 Md. at 16–17. Of these fixed amounts, none are analogous to the amount due in this case.

20

dates pursuant to a contract." *Id.* at 460. The court further determined, "[t]he same logic is not applicable with respect to legal fees. Prejudgment interest was not recoverable as a matter of right on this *unliquidated* amount[.]" *Id.* at 463 (emphasis added). The court accordingly held, "the award of prejudgment interest [as to the legal fees] was encompassed within the trial court's discretion." *Id.* Thus, the court rejected the argument for prejudgment interest on legal fees as a matter of right.

As explained above, we agree. Therefore, we conclude that the legal fees incurred by Nationwide in its defense of Questar were not ascertainable at the time of breach and therefore not liquidated on a date prior to trial. Under the exception to the general rule, prejudgment interest on defense costs in an ongoing suit is a matter of discretion for the trier of fact. Thus, under these facts, Nationwide is not entitled to prejudgment interest as a matter of right.

2.      *Requirements of Maryland Rule 2-604(a) for Prejudgment Interest.*

Maryland Rule 2-604(a) requires that "[a]ny prejudgment interest awarded by a jury or by a court sitting without a jury shall be separately stated in the verdict or decision and included in the judgment." This rule was examined by the Court of Special Appeals in *Fraidin v. Weitzman*, 93 Md. App. 168. In that case, the jury was not instructed on prejudgment interest. *Id.* at 219. However, when the jury returned a verdict, it awarded a compensatory damages amount "plus interest." *Id.* The Court of Special Appeals held that "the mere addition of the words 'plus interest' after the amount of the compensatory award is insufficient to satisfy the requirement" of Rule 2-604(a) that an award of prejudgment interest be "separately stated in the verdict." *Id.* In reaching this holding, the court relied

21

on the decision by the United States District Court for the District of Maryland in *Eden v. Amoco Oil Co., Inc.*, that reasoned:

> Because prejudgment interest is an element of the plaintiff's damages, the decision to include it as part of an award properly lies with the finder of fact. . . . The notion that prejudgment interest is discretionary with the fact finder . . . does not authorize a court, once a jury has determined damages, to add to those damages a sum for prejudgment interest. The allowance of prejudgment interest would have been discretionary with the jury had it been presented to the jury for consideration and had [the plaintiff] requested the Court so to instruct the jury. No such claim was presented to the jury and no such request for instruction was made by [the plaintiff]. It is not now within the province of the Court to add to the verdict that which was within the province of the jury.

741 F. Supp. 1192, 1196–97 (D. Md. 1990). The Court of Special Appeals concluded that "[w]ithout some instruction on prejudgment interest, we cannot be certain that the jury intended to award prejudgment interest when it said 'plus interest.' Absent a clear and separate statement from the jury that the compensatory award should include prejudgment interest, the trial judge[] erred in awarding it." *Fraidin*, 93 Md. App. at 220.

Several pertinent facts here mirror those of *Fraidin*. In both cases the plaintiff did not request a jury instruction be given on prejudgment interest. Further, here, Nationwide did not propose any questions on prejudgment interest in the special verdict sheet it provided to the court. In both cases no jury instruction on awarding prejudgment interest was given, and where the *Fraidin* jury added "plus interest" to the compensatory damages award in the verdict, the jury here made no mention of interest at all. Thus, we find that the facts in this case are more clearly indicative of non-compliance with Maryland Rule 2-604(a) than those examined by the *Fraidin* court.

22

Furthermore, we find the *Fraidin* court's reliance on *Eden* particularly relevant and agree that where an award of prejudgment interest falls within the discretion of the factfinder, as it does here, it is improper for a court to add an award of prejudgment interest after the jury has not separately stated such award in the verdict. As we explained above, the allowance of prejudgment interest in this case would have been discretionary for the jury had it been presented to the jury. However, it was not presented to the jury, and consequently the jury offered no separate statement awarding prejudgment interest in the verdict. Accordingly, it was improper for the circuit court to issue an order awarding Nationwide $430,534.82 in prejudgment interest following Nationwide's letter to the court on March 20, 2018.[8]

Lastly, Nationwide seeks to distinguish this case from *Fraidin* by pointing out that these facts involve a breach of contract instead of an intentional interference with a contract. However, we find the distinction irrelevant for the purposes of our analysis. Maryland Rule 2-604(a) does not distinguish procedural requirements for prejudgment interest on the basis of the underlying claims. Instead, Maryland Rule 2-604(a) provides one uniform rule requiring any discretionary award of prejudgment interest by the factfinder to be separately stated in the verdict or decision. This requirement

---

[8] Selective Way argues that Nationwide's March 20, 2018 letter seeking prejudgment interest was improper, in part, because it was an "*ex parte* letter." On this point, we disagree. An *ex parte* communication is defined as a "communication between counsel and the court when opposing counsel is not present." *Communication*, Black's Law Dictionary (11th ed. 2019). Selective Way's counsel was copied on the letter and received it contemporaneously with the court. Thus, the March 20, 2018 letter was not an *ex parte* communication.

23

was not met, and the underlying claim—breach of contract—provides no basis to deviate from the rule.[9]

## CONCLUSION

For the foregoing reasons, we hold that Nationwide is not entitled, as a matter of right, to prejudgment interest on defense costs resulting from Selective Way's breach of its duty to defend Questar because such damages are unliquidated, not fixed by agreement and not ascertainable at the time of breach. Consequently, prejudgment interest on defense costs are left to the discretion of the factfinder. Here, the jury as factfinder was not presented with a claim of prejudgment interest, was not instructed on the issue of prejudgment interest, and did not separately state an award of prejudgment interest in the

---

[9] In their briefs and at oral argument, Nationwide and Selective Way offer competing arguments on whether the purpose for awarding prejudgment interest—to compensate the aggrieved party for the loss of the use and income of the principal liquidated sum due—is supported by the facts of this case. *See Buxton*, 363 Md. at 652. Nationwide contends Selective Way withheld payment due for the defense costs of Questar for over ten years and enjoyed the use of those funds during that time, thereby rendering compensation for the loss of use and income from those funds appropriate and satisfying the purpose of awarding prejudgment interest. Selective Way counters that Nationwide "decided to defend the case largely due to its insured separate exposure" and thus would have incurred similar defense costs regardless of Selective Way's acceptance or denial of the duty to defend Questar. Selective Way maintains that Nationwide did not experience any substantial loss of income or use of funds, and the purpose of prejudgment interest would not be fulfilled under the facts of this case. However, finding prejudgment interest is not allowable under any circumstances because the amount in question was unliquidated, thereby not a matter of right, and the procedural requirements under Maryland Rule 2-604(a) were not met, we do not need to reach the question of whether the purpose for awarding prejudgment interest is satisfied under the facts of this case.

24

verdict as required by Maryland Rule 2-604(a). Therefore, the circuit court was not authorized to award Nationwide prejudgment interest in the amount of $430,534.82.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**