*Michael Pellet v. Tara Pellet*, No. 1439, September Term, 2024. Opinion by Graeff, J.

**CHILD SUPPORT ARREARS—EQUITABLE DEFENSES**

Pursuant to Md. Code. Ann., Family Law ("FL") § 12-104 (2024 Supp.), a court does not have authority to retroactively modify a child support award prior to the date a motion for modification is filed. The statute contains no exception for a case where equitable defenses are asserted.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1439

September Term, 2024

_____

MICHAEL PELLET

v.

TARA PELLET

_____

Graeff,
Nazarian,
Meredith, Timothy E.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: November 21, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On November 9, 2021, appellant, Michael T. Pellet ("Father"), filed a petition to modify child support in the Circuit Court for Frederick County. Tara Pellet ("Mother"), appellee, then filed a counter-complaint to establish child support arrears. On October 4, 2023, the circuit court granted Mother's Motion for Summary Judgment regarding child support arrears, ruling that it could not retroactively modify child support prior to the date the motion for modification was filed. *See* Md. Code Ann., Family Law ("FL") § 12-104 (2024 Supp.). The court ordered that judgment be entered in Mother's favor, against Father, in the amount of $55,224.00. It reserved ruling on the request for an award of attorney's fees and pre-judgment interest. The court subsequently denied Mother's request for attorney's fees, but it granted her request for pre-judgment interest in the amount of $7,038.00.

On appeal, Father presents the following questions for this Court's review, which we have rephrased slightly, as follows:

1. Did the circuit court err in ruling that it could not modify child support prior to the time the motion to modify was filed and awarding Mother child support arrears in the amount of $55,224.00?

2. Did the circuit court abuse its discretion in awarding Mother pre-judgment interest in the amount of $7,038.00?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were divorced in 2009. They have two children: W. (born in 2001) and A. (born in 2004).[1]

---

[1] We will use the children's first initial to protect their privacy.

On October 18, 2017, after the parties reached an agreement on custody and child support, the court issued a Consent Order. The Consent Order provided that Mother had sole legal decision-making authority and physical custody of the children, with Father to have specified access. With respect to child support after W. was emancipated, the Consent Order provided:

> ORDERED, that unless either party files pleadings for a judicial review, beginning and accounting from the first day of the first month after [W.'s] graduation from high school and having turned 18, the Plaintiff [Father] will pay child support to the Defendant [Mother] for the one remaining child in the amount of $2,301.00 per month, pursuant to the Maryland Child Support Guideline worksheet attached hereto as Exhibit B; and it is further,
>
> ORDERED, that pursuant to the provisions of *Family Law Article* 12-101, the following three paragraphs are included in this Order:
>
> > (1) Each party is required to notify the Court and any support enforcement agency ordered to receive payment within 10 days of any change of address or employment; and
> > (2) Failure to comply with paragraph (1) above may result in the party not receiving notice of the initiation of a proceeding to modify or enforce a support order; and
> > (3) Failure to comply with paragraph (1) could result in a fine of up to $250.00.
>
> \* \* \*
>
> ORDERED, that if there is a dispute between the parties regarding any of the provisions in this Consent Order, or if either party feels there is a material change in circumstances that warrants a modification of this Consent Order, the parties agree to participate in at least one mediation session prior to seeking any redress from the Court.

On July 31, 2019, Father's employer informed him that his employment would be terminated in one week. Father notified Mother the same day, stating that he would not be able to pay child support until he found a new job. Between July 31 and August 19, 2019,

Father reached out to Mother, and the attorney who represented Mother in the divorce, several times, seeking a meeting to discuss a temporary custody and child support arrangement until he found another job. The attorney advised that he was on vacation and would consult with Mother to determine if she wanted to retain him again in her dealings with Father in this regard. On August 15, 2019, Father filed a Notice of Change of Address and Employment with the circuit court.

On August 29, 2019, Mother emailed Father, stating that she could not afford to have her attorney mediate this issue. She offered to contact a mediator who was more affordable, and she asked Father to let her know if he wanted her to do that.

On September 5, 2019, Father provided Mother with his unemployment benefit information and suggested that they "skip a mediator," stating that he could draft a temporary agreement providing for no child support while he was unemployed and an agreed upon visitation schedule. On October 2, 2019, Father sent another email, asking Mother to respond to his email. He stated that, if he did not hear from her by October 10, he would "start the process of filing with the court."

On October 21, 2019, Mother responded, apologizing for her delay in responding and stating that she had been very busy at work. She advised that, with respect to child support, Father needed to change that with the court, and she could "not be financially responsible to help you with this change."

On October 22, 2019, Father sent another email, suggesting three possible ways of resolving the issue:

1. You and I can agree on terms and I can draft the new agreement, we both sign it, and I submit it to the court. I would encourage you to run whatever I create by your attorney for review and comment.
2. We can hire a professional mediator (as has been done in the past) where we both split the cost to meet the mediator and they help us come up with a plan provided we both are agreeable to the terms. Whatever the mediator helps us with will still have to be written up (which I am also happy to do to save money) and you will probably still want to run it by your attorney for review and approval.
3. You can refuse to do either and I can file with the court. Once that happens you will either need to defend yourself in court or hire your lawyer to support you through the process (If you do not remember we have been down this exact road before, most likely at the first hearing the court will tell us to go to mediation – it is called court ordered mediation. Which will result in both of us paying for option #2 in addition to any court related/attorney fees you have to pay). I will be asking the court to basically revise the agreement because you are unwilling to work with me to revise the agreement given the material change in circumstance (loss of my job and move to Maryland). I am prepared to file already, as I have my financial statement, and initial filing already prepared.

Father stated that, if Mother did not respond by October 25, he would "begin the court filing process."

On October 30, 2019, Mother responded, stating that she was willing to go to mediation, and she had a list of mediators if he wanted her to call one. She stated, however, that she did not want to be held financially responsible for making the change to child support, which was a calculation that did not have to be mediated. With respect to visitation, Mother stated that Father could see the children whenever he wanted. The decision to mediate or start court proceedings was his choice.

4

The parties continued to exchange emails regarding Father's visitation with the children. Father also requested Mother's financial information. On December 13, 2019, Mother sent an email with concerns about the visitation schedule in Father's proposed agreement. With respect to child support, Mother stated that "it has been set by the court so you need to change it with the court." Father responded that child support was not something he must "do with the court." He stated that he and Mother merely needed to put their income in a calculator tool, which gave a number.

In June 2020, Father emailed Mother several times, stating that "COVID-19 issues" had made his job search difficult, and he wanted to get an agreement resolved and filed with the court. Mother responded that Father could spend as much time with his minor child as A. wanted,[2] she had told Father that she would not pay to change the agreement, and if Father wanted to do that, he should engage a lawyer.

In August 2020, Mother asked if Father had obtained employment, noting that he had made no attempts to pay child support. Mother reiterated her refusal to contribute monetarily to negotiate a new agreement, but that Father should let her know if he wanted to pay a lawyer. She stated that "none of this changes your obligation to [pay] child support." The parties continued to email each other through the end of 2020, with Father repeating that he wanted the parties to write an agreement themselves to save money.

On March 2, 2021, Father provided an overview of his financial position and again requested that the parties negotiate a new agreement regarding custody and child support

---

[2] W. was emancipated at this point.

5

or engage a mediator. On April 25, 2021, Father sent Mother a lengthier email, informing her that the parties must split the cost of mediation. He acknowledged that the agreement in place could be used against him if it was not changed. He indicated that the "meat" of any new agreement concerned custody, and once he found a job, he would file with the court to revise the child support obligation.

On August 4, 2021, Mother advised Father to do whatever he felt was necessary. She noted that A. had been with Father whenever A. and Father agreed.

On August 31, 2021, Father filed with the court a notice of change of employment, stating that, on September 1, 2021, he would have new employment. On September 22, 2021, Father asked Mother if she was open to him using money that he otherwise would pay in future child support to buy A. a car, explaining that it would help Father because he could "spread the cost out over time by financing the car." Mother declined that request. She stated that she had been reasonable and not pressured him because he was out of work, but she recommended that Father "contact the court to figure out how to make arrangements to pay [his] back child support." She stated that her lawyer believed nothing would change regarding these payments, but he should check with his lawyer to confirm.

On November 9, 2021, Father, an unrepresented litigant, filed a Petition to Modify Child Support. He alleged that, since the October 2017 Consent Order governing custody, visitation, and child support, there had been material changes in circumstances that required a change in visitation and child support. These changes included that, in August 2019, he was terminated from his job, and as a result, he moved back to Maryland. Father

6

alleged that he repeatedly asked Mother to mediate or negotiate a new agreement to replace the Consent Order, but Mother either: (1) refused; (2) agreed but then failed to respond to his attempts to follow-up; or (3) failed to respond at all.[3]

In his petition, Father admitted that he did not pay child support from September 2019 to September 2021. He asked the court to determine and verify:

i. The calculation for child support from September 1, 2021 through May 30, 2022.

ii. The calculation for child support from September 1, 2019 through November 31, 2020, the period of time when the Plaintiff was receiving unemployment income.

On December 16, 2021, Mother filed an answer to Father's petition. She stated that the issue of ongoing child support was moot, given that the parties had resolved that issue at mediation after the filing of the complaint. She stated that the only issue was Father's request for retroactive modification of child support to the date he lost his job.[4] Mother argued that the court lacked jurisdiction to grant Father's request in this regard because the court may not retroactively modify child support prior to the date of the filing of the motion for modification. She noted that Father did not file his petition until November 9, 2021, and the court could modify child support only from that date forward. Mother asked the court to determine the amount of arrears owed by Father from August 2019 until August

---

[3] Father alleged that he reached out to Mother on more than 20 occasions in the course of 41 exchanged emails.

[4] Mother noted that visitation was not at issue because Father saw his children whenever it could be arranged.

2021, when he started to pay child support again. Additionally, Mother asked the court to assess pre-judgment interest on the amount owed in back child support.

On December 16, 2021, Mother filed a Counter-Complaint to Establish Child Support Arrears, alleging that, pursuant to the October 2017 Consent Order, Father owed $2,301.00 per month for child support, but he failed to make any payments from August 2019 until August 2021, "despite his unemployment income and his COVID relief payments." She alleged that Father owed back child support for 24 months, for a total amount of $55,224.00. She asked the court to enter judgment in that amount, with post-judgment interest at the rate of 10% per year, and award pre-judgment interest, to be calculated each month as payment became due. Mother also requested attorney's fees, and she asked the court to establish a payment plan for Father to pay the judgment.

On January 14, 2022, Father filed an answer, admitting that he did not make any child support payments from August 2019 until August 2021, despite his unemployment income and his COVID-19 relief payments. He alleged, however, that pursuant to the Consent Order, he could not seek modification from the court until the parties had participated in a mediation session, and Mother refused to do that until November 2021. Father raised multiple affirmative defenses, including unclean hands, waiver, failure to mitigate, and breach.

On June 22, 2022, Father filed an amended petition to modify child support, noting that he had begun a new job and paid Mother an increased amount of child support in April

8

and May 2022, when A. became emancipated. Father asked the court to find that his child support obligation had been satisfied and order Mother to pay his attorney's fees.

On August 3, 2022, Mother filed a motion for summary judgment, arguing that, pursuant to FL § 12-104(b), a court cannot retroactively modify child support for any period prior to the filing of a request for modification. She asserted that the court, therefore, could not modify, reduce, or wipe out child support arrears that accrued before the date when Father filed his motion to modify.

On August 12, 2022, Father, at this point represented by counsel, filed a motion to strike Mother's motion, arguing that there were genuine disputes regarding material facts. Father alleged that the primary material fact in dispute was whether Mother's conduct effectively breached the parties' agreement and intentionally delayed child support modification for two years. Father requested that Mother's motion for summary judgment be denied, allowing for the fact finder to address Mother's motive and intent, as well as Father's defense that Mother's improper conduct barred her from recovering arrears under the doctrines of unclean hands, waiver, failure to mitigate, and breach of contract.

On September 14, 2022, the circuit court held a hearing on Mother's motion for summary judgment. At the conclusion of the hearing, the court stated that section 12-104 of the Family Law Article was enacted because courts had been modifying child support retroactively, prior to the time a motion to modify was filed. The court stated that, based on the clear language of the statute, it did not "have the power to modify a child support order prior to the date that a motion to modify is filed by the obligor." The court continued:

I don't have the authority to do that. I know of one exception, statutory exception, to that statute, and that is where a defendant has been sentenced to prison for longer than 18 months; only in those cases does the [c]ourt have the authority to modify support, and it's only after a period of 18 months. Clean hands, unclean hands, motive, none of that is relevant to the application of this statute. And the reason for that is child support, although people think of it as being paid to the other spouse, ex-spouse, it is to benefit the child . . . . And to paraphrase, the sins of the father are not visited on the child. So I do not have the authority to modify the amount of money that is agreed is due under this statute, which is the $55,224.

Accordingly, the court stated that it would grant the motion for summary judgment for child support arrears in the amount of $55,224.00.

With respect to the requests for pre-judgment interest and attorney's fees, the court declined to grant summary judgment. It stated that the claims of unclean hands and fairness might be relevant to those issues, and the court would address those issues after a petition had been filed.

As discussed in more detail, *infra*, after further pleadings were filed, the court held a hearing. It awarded Mother pre-judgment interest in the amount of $7,038.

This appealed followed.

## DISCUSSION

### I.

### Summary Judgment

Father contends that the court erred in granting summary judgment on the issue of child support arrears. He asserts, as he did below, that the Consent Order required mediation before he could move for a modification of child support, but Mother refused to mediate. He argues that Mother's improper conduct and intent in the two years leading up

10

to the litigation "barred her from recovering arrears under the doctrines of unclean hands, waiver, failure to mitigate, and breach of contract," and "these defenses made summary judgment inappropriate."

Mother disagrees. She contends that the circuit court properly determined that it could not retroactively modify or reduce Father's child support arrears prior to the time he filed his motion to modify. Mother argues that the purpose of "child support is to benefit the child, not the ex-spouse; and therefore, any defenses regarding her motive or unclean hands was irrelevant." In any event, she asserts that she never prevented Father from filing a motion to modify, but instead, Father "slept on his rights."

**A.**

**Standard of Review**

Maryland Rule 2-501(f), governing motions for summary judgment, provides that a circuit court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "[A] material fact is 'a fact the resolution of which will somehow affect the outcome of the case.'" *Romeka v. RadAmerica II, LLC*, 485 Md. 307, 330 (2023) (quoting *USA Cartage Leasing, LLC v. Baer*, 202 Md. App. 138, 174 (2011)).

A court's grant of summary judgment is subject to de novo review. *Wadsworth v. Sharma*, 479 Md. 606, 616 (2022). In reviewing a grant of summary judgment, we "independently review the record" in the light most favorable to the non-moving party "to

11

determine whether the parties properly generated a dispute of material fact[.]" *Wildewood*

*Operating Co. v. WRV Holdings, LLC*, 259 Md. App. 464, 475 (2023) (quoting *Myers v.*

*Kayhoe*, 391 Md. 188, 203 (2006)). If we conclude that there are no genuine issues of

material fact, we must determine whether the circuit court's grant of summary judgment is

legally correct. *Meese v. Meese*, 212 Md. App. 359, 368 (2013).

**B.**

**Analysis**

As the Supreme Court of Maryland recently explained:

> Parents of a minor child "are jointly and severally responsible for the child's
> support, care, nurture, welfare, and education[.]" FL § 5-203(b)(1). This legal
> obligation to support a minor child is also a "moral obligation[,]" which "is
> [a] well-settled [principle] in Maryland [law]." *Petrini v. Petrini*, 336 Md.
> 453, 459, 648 A.2d 1016 (1994). Because the obligation is to support the
> child, Maryland courts have long recognized that the right to child support is
> a right held by the minor child—not a right held by the parent to whom the
> child support is paid.

*In re Marriage of Houser*, 490 Md. 592, 607 (2025). Child support obligations cannot be

waived or bargained away, by contract or otherwise, since it is a right held by the minor

child. *Id.*

The modification of court-ordered child support is governed by FL § 12-104, which

provides:

> (a) The court may modify a child support award subsequent to the filing of a
> motion for modification and upon a showing of a material change of
> circumstance.
> (b) The court may not retroactively modify a child support award prior to the
> date of the filing of the motion for modification.
> (c) If a party becomes incarcerated, the court may determine that a material
> change of circumstance warranting a modification of child support has

12

occurred, provided that the party's ability to pay child support is sufficiently reduced due to incarceration.

In *Harvey v. Marshall*, 389 Md. 243, 264-68 (2005), the Supreme Court of Maryland explained that this statute was enacted in 1988 in response to concerns regarding courts eliminating child support arrearages, as well as to maintain eligibility for federal funding regarding child support enforcement. *Accord Damon v. Robles*, 245 Md. App. 233, 239-40 (2020). Since the statute's enactment, this Court consistently has made clear that a court does not have authority to retroactively modify a child support award prior to the date that a motion for modification is filed. *See Stevens v. Tokuda*, 216 Md. App. 155, 177 (2014); *Petitto v. Petitto*, 147 Md. App. 280, 309 (2002); *Ley v. Forman*, 144 Md. App. 658, 677 (2002); *Krikstan v. Krikstan*, 90 Md. App. 462, 472-73 (1992). Even in the case of a parent's death, the other parent's obligation to financially support their children does not end and cannot be retroactively modified. *Prince George's Cnty. Off. Of Child Support Enf't ex rel. Polly v. Brown*, 236 Md. App. 626, 635 (2018).

Father argues, nevertheless, that the issue whether to modify child support arrears is an issue of equity within the court's discretion. In support, he relies on *Kemp v. Kemp*, 42 Md. App. 90, 102 (1979), *rev'd on other grounds by Kemp v. Kemp*, 287 Md. 165, 411 (1980). That decision, however, was issued prior to the enactment of FL § 12-104(b), which provides, with only one exception not applicable here, that the court "may not retroactively modify a child support award prior to the date of the filing of the motion for modification."[5]

---

[5] The one exception listed in the statute involves the incarceration of a party. Md. Code Ann., Family Law ("FL") § 12-104(c) (2024 Supp.)

13

Father asks us to insert an additional exception for a case where there are equitable defenses, such as the doctrine of unclean hands or equitable estoppel. The law is clear, however, that we cannot add language to a statute. *See Hollabaugh v. MRO Corp.*, 491 Md. 165, 176 (2025) ("In [the] analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it[.]"); *Woodlin v. State*, 484 Md. 253, 279-80 (2023) ("*[W]e neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute*, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.").

Based on the plain language of FL § 12-104, the circuit court properly ruled that it could not modify the child support arrears that accrued prior to the date the motion to modify was filed, i.e., November 9, 2021. There is no equitable defense in this regard. If a parent seeks to modify court-ordered child support based on a material change in circumstances, the parent should file a motion to modify with the court without delay.

## II.

### Pre-Judgment Interest

On August 8, 2024, the circuit court held a hearing regarding Mother's request for pre-judgment interest on the child support arrears.[6] The parties stipulated that, if awarded, pre-judgment interest would be set at 6% per annum, simple (non-compounded) interest, for a total of $7,038.00. In granting Mother's request for pre-judgment interest in the

---

[6] The court also addressed the request of each party for attorney's fees. It declined to grant either request, and that is not an issue in this appeal.

14

amount of $7,038.00, the court stated: "I don't have to decide whether it's discretionary, because I am exercising my discretion. I do believe, under the facts I've heard of this case, that that is merited and warranted." Accordingly, the court awarded pre-judgment interest in the amount of $7,038.00.

Father contends that the circuit court abused its discretion in awarding Mother pre-judgment interest in the amount of $7,038.00. He argues that such an award should "be reviewed through the lens of the best interest of the child," and the award here was not "equitable, fair, nor was it in the best interests of the parties' child." Moreover, he asserts that the award of pre-judgment interest rewards Mother's "bad behavior."

Mother disagrees. She contends that the court properly exercised its discretion in awarding pre-judgment interest in the amount of $7,038.00.

The purpose of pre-judgment interest "is 'to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds.'" *Harford Cnty. v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 95 (2007) (quoting *Buxton v. Buxton*, 363 Md. 634, 652 (2001)). Courts recognize two categories of pre-judgment interest: discretionary and as of right. *Nationwide Prop. & Cas. Ins. v. Selective Way Ins.*, 473 Md. 178, 189 (2021). An award of pre-judgment interest as a matter of right is an exception to the general rule. *Id.* at 193. Whether a party is entitled to pre-judgment interest generally is left to the discretion of the trier of fact. *Id.* at 189-90; *I. W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 18 (1975); *Ver Brycke v. Ver Brycke*, 379 Md. 669,

15

702 (2004). We review a circuit court's discretionary decision for an abuse of discretion. *Spaw, LLC v. City of Annapolis*, 452 Md. 314, 363 (2017).

Here, the court stated that, in awarding pre-judgment interest, it was exercising its discretion. The exercise of discretion in awarding pre-judgment interest must be grounded in equity and justice between the parties and in light of all the circumstances. *I. W. Berman Props.,* 276 Md. at 19-20. Based on the circumstances of this case, where the record shows that Mother told Father that he needed to take the issue of child support to the court, but he delayed doing so, we perceive neither error nor abuse of discretion in the court's award of pre-judgment interest.

**JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**